UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| LIQUIDX, INC., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> BROOKLAWN CAPITAL, LLC, ) <br> BROOKLAWN CAPITAL FUND, LLC, and ) <br> BROOKLAWN CAPITAL FUND II, LP ) <br> ) <br> Defendants. ) <br> ) | Civil Action No. 16-cv-5528-WHP |

## **FINAL PRETRIAL ORDER**

I.  **APPEARANCES:**

    For Plaintiff:    Peter A. Sullivan, Esq.
                             FOLEY HOAG LLP
                             1540 Broadway, 23rd Floor
                             New York, NY 10036
                             psullivan@foleyhoag.com
                             Telephone: (646) 927-5500
                             Facsimile: (646) 927-5599

                             Michael Licker, Esq.
                             FOLEY HOAG LLP
                             155 Seaport Boulevard
                             Boston, MA  02110
                             mlicker@foleyhoag.com
                             Telephone: (617) 832-1000
                             Facsimile: (617) 832-7000

    For Defendants:    Daniel E. Rhynhart, Esq.
                             Louis D. Abrams, Esq.
                             BLANK ROME LLP
                             One Logan Square
                             130 North 18th Street
                             Philadelphia, PA 19103
                             rhynhart@blankrome.com

abrams-l@blankrome.com
Telephone: (215) 569-5371
            (215) 569-5468
Facsimile: (215) 832-5371

Andrew T. Hambelton, Esq.
BLANK ROME LLP
405 Lexington Avenue
New York, NY 10174
ahambelton@blankrome.com
Telephone: (212) 885-5345
Facsimile: (917) 332-3736

II.     **NATURE OF ACTION**

   A. Plaintiff/Counterclaim Defendant LiquidX, Inc. ("LiquidX") has asserted a claim for a declaration of rights under 28 U.S.C. § 2201 that LiquidX is not a signatory to any agreement to arbitrate with Defendants/Counterclaimants Brooklawn Capital LLC, Brooklawn Capital Fund LLC, and Brooklawn Capital Fund II, LP (collectively "Brooklawn") and not an alter ego of The Receivables Exchange ("TRE").[1]

   B. Brooklawn responds to Liquid X's declaratory judgment claim and asserts its own Counterclaim for declaratory judgment (Count I) that Liquid X is the alter ego, successor, and/or single business enterprise of TRE, the respondent in an underlying AAA arbitration pending in New Orleans, Louisiana, and, consequently, that Liquid X should be joined as a respondent in that arbitration.[2]

III.    **SUBJECT MATTER JURISDICTION:**

   A. The parties submit that the Court has subject matter jurisdiction over the claims and counterclaim to be litigated at the alter-ego hearing taking place on November 14, 2016 pursuant to 28 U.S.C. § 1332 in that the amount in controversy in the underlying

---

[1] LiquidX does not believe that any claim for successor liability should be decided in this initial proceeding. The claim was not adequately raised in the original answer and should not be decided along with alter ego. It was not raised as a counterclaim in the original answer.

[2] Brooklawn has also asserted counterclaims against Liquid X and three other Counterclaim Defendants—John Connolly (TRE's former Chairman, and current Liquid X director, investor and creditor); James Toffey (TRE's former President and CEO, and Liquid X's current President and CEO); and James Toffey (TRE's former Chief Strategy Officer and Chief Financial Officer, and current LiquidX investor). Those counterclaims (Counts II – IX) include the following causes of action: fraudulent transfer under New York Debtor and Creditor Law §§ 274, 275, 276-a, and 279; unjust enrichment, breach of fiduciary duty, and aiding and abetting a breach of fiduciary duty. Brooklawn also seeks a declaratory judgment that the Liquid X foreclosure under Section 9-620 of the New York Uniform Commercial Code ("UCC") is null and void because it violated TRE's Loan Agreement with Comerica that was assigned to Liquid X and was carried out in bad faith. These Counterclaims have been stayed per the Court's October 12, 2016 Order.

arbitration that Brooklawn would be seeking against LiquidX (as alter ego to TRE) exceeds $75,000, LiquidX is a Delaware corporation with its principal place of business in New York, and Brooklawn is organized under the laws of the Cayman Islands and has a principal place of business in the Cayman Islands.

IV.   **TRIAL LENGTH:**   The estimated length of trial is 3-4 days.

V.   **TRIAL BY JURY:**   This case is to be tried without a jury.

VI.   **TRIAL BY MAGISTRATE JUDGE:**   All parties have not consented to trial of the case by a magistrate judge.

VII.   **AGREED STATEMENTS AND LISTS:**

**A. General Nature of the Claims and Defenses of the Parties**

a. LiquidX's Claims and Defenses: Plaintiff acquired assets, through foreclosure, of a deeply distressed company, TRE. TRE was already a party to an arbitration with Defendants when the foreclosure sale took place and its assets were already subject to senior secured liens ranking in priority to any unsecured creditor prior to both the arbitration and foreclosure. Defendants claim that Plaintiff's actions in obtaining the assets from TRE makes it an alter ego of TRE and as such requires the joinder of Plaintiff to the arbitration even though Plaintiff is not a signatory to any agreement to arbitrate with Defendants. In moving the arbitrator to join Plaintiff, Defendants have mischaracterized the foreclosure by Plaintiff against secured assets of TRE.

Plaintiff cannot be joined to the arbitration because it is not the alter ego of TRE. Its foreclosure had no impact on any potential recovery by TRE's unsecured creditors and there are assets available to satisfy any potential judgment obtain by Defendants against TRE in the arbitration.

Plaintiff has not identified any additional claims or defenses relating to Defendants counterclaims, including without limitation any claim for successor liability, which are currently stayed. Plaintiff reserves its rights to identify such claims or defenses in the future should that become necessary.

b. Brooklawn's Claims and Defenses: Brooklawn asserts that Liquid X is an alter ego, successor, and/or single business enterprise with TRE under Louisiana and New York law.[3] This is a two-prong analysis: 1) one company exercises complete control over the other; and 2) such control was used to defraud or injure a party.

---

[3] While Brooklawn contends Louisiana law applies here, because TRE was headquartered in Louisiana (although it had New York offices) and because TRE stated that Louisiana law applies to the AAA arbitration in its form

- 3 -

In this case, three directors and officers of TRE—John Connolly, TRE's Chairman; Jim Toffey, TRE's President and CEO; and James Kovacs, TRE's Chief Financial and Strategy Officer (collectively, "TRE's Management Team")—concocted a fraudulent scheme during the pendency of the Brooklawn-TRE arbitration, to move TRE's assets and entire business into Liquid X, a newly-formed corporate shell that they founded, owned and managed. They did this to avoid having to pay a potential $10 million judgment to Brooklawn and to increase their own wealth. This scheme, by design, stripped TRE of all its material assets, and left it insolvent.

Liquid X took over the entire TRE business, occupied its offices (in New York and New Orleans), hired its employees, kept the same management team, continued working with the same customers and changed nothing except the company name—which TRE's Management Team described as a mere "re-branding" of TRE.

TRE's Management Team—who are listed as the founders of Liquid X on the company's formation documents—all purchased stock in Liquid X at reduced rates, and Connolly and Toffey also loaned Liquid X money. At the same time, they abdicated their responsibilities to most of TRE's creditors and shareholders, who were left with little to nothing. Most significantly, by design, TRE was made an empty shell so that Brooklawn, a contingent creditor of TRE, could recover nothing in the arbitration. In a telling sign that they were aware they were engaged in wrongdoing, TRE's Management Team corresponded secretly, by G-mail, when communicating about Liquid X.

Under both Louisiana and New York law, this is a clear case of alter ego, successor, and/or single business enterprise liability, and Brooklawn respectfully requests that Liquid X be joined as a respondent with TRE in the arbitration.

B. **Uncontroverted Facts**

The following facts are established by admissions in the pleadings or by stipulation of counsel:

1. LiquidX is a Delaware corporation with its principal place of business in New York and operates an electronic exchange platform.

2. Brooklawn is organized under the laws of the Cayman Islands.

3. TRE entered into a Loan and Security Agreement with Comerica Bank in 2014.

4. Brooklawn initiated a AAA arbitration against TRE in August 2015 that is currently pending in New Orleans, Louisiana before Arbitrator Corinne A. Morrison.

---

contract, Brooklawn also cites New York law, because Liquid X assert that its principal place of business is in New York.

5. On September 25, 2015, an award was entered against TRE in an arbitration brought by another customer on TRE's exchange ("The Solaia Arbitration").

6. On July 1, 2016, Defendants filed a motion to join Plaintiff as a respondent in the pending arbitration proceedings in Louisiana between Defendants and TRE as TRE's alter ego.

C. **Contested Issues of Fact**

1. LiquidX contends that the contested issues of fact remaining for decision are:

   a. Whether Plaintiff maintains a separate and distinct corporate existence from TRE.

   b. Whether any of the underlying allegations in the arbitration were committed by Plaintiff.

   c. Whether any of the underlying allegations in the arbitration were personally committed by Gary Mueller.

   d. Whether actions by Plaintiff have had any impact on a potential recovery by TRE's unsecured creditors, including Defendants.

   e. Whether Plaintiff is a parent to, subsidiary of, or affiliate of TRE.

   f. Whether there is any overlap in ownership between Plaintiff and TRE.

   g. Whether there has ever been any confusion directed at third parties, including Defendants, as to whether it was transacting with Plaintiff or TRE.

   h. Whether Platintiff's purchase of TRE's loan from Comerica and foreclosure on those assets in a transaction with TRE were both fair market value transactions.

2. Brooklawn contends that the contested issues of fact remaining for decision are:

   a. Whether TRE transformed itself into Liquid X in order to fraudulently siphon away substantially all of TRE's assets so they would not be subject to a contingent liability to Brooklawn;

   b. Whether TRE's Management Team moved the entire TRE business over to Liquid X, a newly-formed corporate entity with no pre-existing business or employees, including without limitation TRE's operations,

- 5 -

        trading exchange, employees, officers, customers, vendors, contracts, offices, phones and equipment.

   c.   Whether TRE has been depleted of nearly all of its material assets, leaving it an empty shell against which Brooklawn can receive no meaningful recovery in the pending AAA arbitration.

   d.   The relevant factual questions for an alter ego analysis include, but are not limited to the following:

      i.   one company "exercised complete control" over the other. In analyzing these factors, the Fifth and Second Circuits[4] have considered an overlapping, non-exhaustive "laundry list" of factors as follows:

1. Common stock ownership;
2. Common directors, officers, and personnel;
3. Common business departments;
4. The companies file consolidated financial statements and tax returns;
5. One corporation finances the other;
6. One company caused the incorporation of the other;
7. One company operates with grossly inadequate capital;
8. One company pays the salaries and other expenses of the other;
9. One company receives no business except that given to it by the other;
10. One company uses the other's property as its own;
11. The daily operations of the two companies are not kept separate; and
12. The companies do not observe the basic corporate formalities, such as keeping separate books and records and holding shareholder and board meetings.[5]

---

[4] As noted above, Brooklawn cites to both Louisiana and New York law here as they contain substantially similar tests for alter ego.

[5] *See Bridas v. Gov't of Turkmenistan* ("Bridas I"), 345 F.3d 347, 359 & n.11 (enunciating factors); *United States v. Jon-T Chemicals, Inc.*, 768 F.2d 686, 694 (5th Cir. 1985) (same); *Clipper Wonsild Tankers Holding A/S v. Biodiesel Ventures, LLC*, 851 F. Supp. 2d 504, 509-10 (S.D.N.Y. 2012) (same) (quoting *In re Holborn Oil Trading Ltd. & Interpol Bermuda Ltd.*, 774 F. Supp. 840, 844-45 (S.D.N.Y. 1991))

    ii. "such control was used to commit fraud or wrong that injured the party."[6]

  e. Louisiana law also recognizes a similar doctrine to alter ego—the single business enterprise theory—in which one entity disregards corporate form such that liability can be extended to the affiliated corporation.[7] The relevant factual questions for a single business enterprise analysis include, but are not limited to the following:

    (1) Common ownership;

    (2) Common directors and officers;

    (3) Common employees;

    (4) Common offices;

    (5) Unified administrative control;

    (6) Similar or supplementary business functions;

    (7) One corporation financing the other;

    (8) Inadequate capitalization;

    (9) One corporation's creation of the other;

    (10) One corporation paying the salaries, expenses, or losses of the other corporation;

    (11) One corporation receiving no business other than that given to it by the affiliated corporation;

    (12) Shared property;

    (13) Noncompliance with corporate formalities;

    (14) Services rendered by the employees of one corporation on behalf of another corporation;

    (15) Centralized accounting;

    (16) Undocumented transfer of funds between corporations;

    (17) Unclear allocation of profits and losses between corporations; and

    (18) Excessive fragmentation of a single enterprise into separate corporations.[8]

---

[6] *See*, *e.g.*, *Bridas v. Gov't of Turkmenistan* ("Bridas I"), 345 F.3d 347, 359 & n.11 (*citing Am. Fuel Corp. v. Utah Energy Development Co., Inc.*, 122 F.3d 130, 134 (2d Cir. 1997)).

[7] *See Green v. Champion Ins. Co.*, 90-0716 (La.App 1 Cir. 5/24/91), 577 So. 2d 249, 257-58.

[8] *See id.*

D. **Contested Issues of Law**

1. LiquidX contends that the contested issues of law, in addition to those implicit in the foregoing issues of fact, are:

    a. Whether Plaintiff is the alter ego of TRE, including whether (1) Plaintiff exercises complete domination and control over TRE; (2) the corporate structure was used to defraud; and (3) Plaintiff maintains a separate and distinct corporate existence from TRE.

    b. Whether Plaintiff and TRE is a single business entity under Lousiana law.

2. Brooklawn contends that the contested issues of law, in addition to those implicit in the foregoing issues of fact, are:

    a. Whether LiquidX is the alter-ego, successor, and/or single business enterprise of TRE, such that Liquid X must be joined in the AAA arbitration. The manipulation of multiple corporations for the purpose of evading a judgment is exactly the sort of abuse that the alter ego doctrine is designed to prevent. *See Bridas II*, 447 F.3d 411, 420 ("[I]ntentionally bleeding a subsidiary to thwart creditors is a classic ground for piercing the corporate veil."). Although the alter ego doctrine was initially developed in the context of a parent corporation and a subsidiary, it has been adapted to a number of different corporate relationships including so-called "sister corporations" as Liquid X and TRE are here. *See Estate of Lisle v. C.I.R.*, 341 F.3d 364, 375 (5th Cir. 2003), *modified on other grounds*, 431 F.3d 439 (5th Cir. 2006) (noting that the alter ego test can be applied outside the parent-subsidiary context); *Dickson Marine Inc. v. Panalpina, Inc.*, 179 F.3d 331, 338-39 (5th Cir. 1999) (evaluating sister companies under alter ego doctrine); *Nichols v. Pabtex, Inc.*, 151 F. Supp. 2d 772, 780 (E.D. Texas 2001) ("[T]he distinction between parent-subsidiary and sister-sister [corporation] is not relevant [for an alter ego analysis].").

    On this point, the precise nature of the organizational structure between the two entities is not dispositive; rather, the critical determination is where the corporate form was manipulated to perpetuate a fraud or injustice. *See Bridas II*, 447 F.3d at 416 ("In making an alter ego determination, a court is 'concerned with reality and not form . . . .'") (*quoting United States v. Jon-T Chemicals, Inc.*, 768 F.2d 686, 693 (5th Cir. 1985)). In other words, the focus is how the operations of one corporation correlated with the other irrespective of the corporations' actual structure. *See id.*

    Pursuant to these principles, two prongs must be satisfied to establish alter ego: (1) one company "exercised complete control" over the other, and

- 8 -

(2) "such control was used to commit fraud or wrong that injured the party." *See*, *e.g.*, *Bridas I*, 345 F.3d at 359 & n.11 (*citing Am. Fuel Corp. v. Utah Energy Development Co., Inc.*, 122 F.3d 130, 134 (2d Cir. 1997)).

In analyzing the first part of the alter ego test, the Fifth and Second Circuits have considered an overlapping, non-exhaustive "laundry list" of factors as articulated above.

b. Whether Liquid X is a single business enterprise with TRE in accordance with the factors articulated above. When two or more corporations constitute a single business enterprise, a court may "disregard the concept of corporate separateness and extend liability to each of the affiliated corporations." *Brown v. Auto Cas. Ins. Co.*, 93-2169 (La.App. 1 Cir. Jan. 6, 1995), 644 So. 2d 723, 727. A single business enterprise "occurs when a corporation is found to be the alter ego, agent, tool or instrumentality of another corporation." *Dishon v. M. Ponthis*, 2005-659 (La.App. 3 Cir. Feb. 8, 2006) 918 So. 2d 1132, 1135.

### E. Witnesses

1. In the absence of reasonable notice to opposing counsel to the contrary, LiquidX will call, or will have available at the trial the following witnesses in its case-in-chief.

    a. John Connolly

    b. Sophia Gielewski

    c. James Kovacs

    d. Gary Mueller

    e. Jim Toffey

    f. Michael Walker

2. In the absence of reasonable notice to opposing counsel to the contrary, Brooklawn will call, or will have available at the trial the following witnesses in its case-in-chief.

    a. Emile VandenBol;
    b. John Connolly;
    c. James Toffey;
    d. Michael Walker;
    e. Sophia Gielewski;

    f.  Bill Roche;

    g.  James Kovacs; and

    h.  Gary Mueller.

## F. Expert Witnesses

LiquidX will call William Haegele of KPMG LLP in its case-in-chief.

Counsel have attached a resume or curriculum vitae of the expert's qualifications as Appendix A hereto.

Brooklawn has not designated an expert for this phase of the action, which is limited to the alter-ego, successor, and single business enterprise analysis. Brooklawn reserves the right to designate an expert when the remainder of its Counterclaims (Counts II – IX) are tried. Brooklawn further reserves the right to contest the admissibility of the opinions of Liquid X's valuation expert, William Haegele, in that an alleged valuation done by TRE is irrelevant to the alter ego, successor, and/or single business enterprise analysis.

## G. Depositions

1. Plaintiff will offer testimony of the following witnesses by transcript and/or video:

    a. Barry Cohen (video)

    b. Jim Counihan (video)

    c. Kimberly Russell (video)

    d. Peter Sullivan (video)

2. Defendants will offer testimony of the following witnesses by transcript and/or video:

    a. Kimberly Russell (video);

    b. Peter Sullivan (video);

    c. Bill Roche (video but only if he fails to appear at trial);

    d. James Kovacs (video but only if he fails to appear at trial);

  e. Jim Counihan (video); and

  f. Barry Cohen (video).

Because of the compressed schedule in the case, depositions are still ongoing as of the filing date of this order.  The parties have attached their respective deposition designations for Kimberly Russell and Peter Sullivan, but have not had the opportunity to consider objections or counter-designations.  LiquidX's and Brooklawn's designations are attached as Appendix D and E, respectively.  Both parties reserve the right to object to any submitted testimony, counter-designate testimony and submit additional testimony with respect to other witnesses.  The parties will work to promptly complete deposition designations, and objections to those designations, for the Court's consideration.

## H. Exhibits

Exhibit lists are attached as appendices to the pretrial order as follows:

Appendix B LiquidX's Proposed Exhibits
Appendix C Brooklawn's Proposed Exhibits

Because of the ongoing nature of discovery, the parties are still working to finalize the joint exhibit list and will supplement this filing as soon as it is completed.  The parties are also still working toward completing a joint exhibit list and expect to work together on the exhibit process with minimal court intervention.

By creating a joint exhibit list, the parties' are stipulating to the authenticity of the exhibits identified only (subject to any specific authenticity objections noted in this pretrial order or any additional supplement).  The parties reserve all objections to any exhibits, including admissibility, for trial.

## I. Stipulations

The parties stipulate that Kimberly Russell of Alvarez & Marsal is unavailable for trial and her testimony will be offered by transcript and/or video.

## J. Completion of Discovery

Except for good cause, all discovery shall be completed before the Final Pretrial Order is signed by the Court. If discovery has not been completed, the proposed pretrial order shall state what discovery is yet to be done by each side, when it is scheduled, when it will be completed, and whether any problems (e.g., objections or motions) are likely with respect to the uncompleted discovery.

Given the expedited nature of discovery in this matter, the following depositions remain pending at the time of the filing of this Order and will be completed by the commencement of trial:

1. Jim Counihan, November 10, 2016 at 9:00 a.m.

2. Gary Mueller, November 10, 2016 at 10:30 a.m.

The parties do not anticipate that any remaining discovery will require the Court's intervention.

## VIII. MODIFICATION

The Final Pretrial Order may be modified at or prior to the trial of this action to prevent manifest injustice. Such modification may be made by application of counsel or on motion of the Court. Further, the parties agree to supplement the Final Pretrial Order with the finalized exhibit list and completed deposition designations.

## IX. JURY INSTRUCTIONS

This is a non-jury trial.

## X. REMAINING ISSUES AND OTHER MATTERS

The following legal issues must be resolved before the beginning of trial:

1. Whether the Court would prefer opening statements before the presentation of evidence.

2. Brooklawn submits that an issue has arisen at the deposition of Brooklawn's principal, Emile VandenBol, that took place on the date of this filing, November 9, 2016, whereby Liquid X used certain privileged documents produced by TRE in the Brooklawn Arbitration (those exhibits were marked as Exhibits 203 to 214 at Mr. VandenBol's deposition). These documents are subject to the attorney-client privilege as TRE was acting as the collateral agent on behalf of Brooklawn in accordance with TRE's form agreements in prosecuting various claims. In all of these documents, Mr. VandenBol is discussing legal strategy with counsel (or agents acting on behalf of counsel) in relation to various frauds perpetrated against him on TRE's electronic exchange. TRE produced those documents as part of a roughly 150,000 page production in the Arbitration. Subsequently, in accordance with the Court's order, Brooklawn produced all of the arbitration documents to Liquid X immediately following execution of the parties' protective order here. Brooklawn was unaware that there were privileged documents produced by TRE (and re-produced to Liquid X) until Liquid X used them in today's deposition. Although irrelevant to this action (the privilege documents concern underlying litigation matters), Brooklawn must take steps to protect its privileged communications. Therefore, Brooklawn reserves its right to object to the use of these documents as privileged pursuant to Rule of Evidence 502.

                                                        **The Honorable William H. Pauley III**
                                                        **United States District Judge**

/s/ Michael J. Licker
Peter A. Sullivan, Esq. (PS-4704)
FOLEY HOAG LLP
1540 Broadway, 23rd Floor
New York, NY 10036
psullivan@foleyhoag.com
Telephone: (646) 927-5500
Facsimile: (646) 927-5599

Michael Licker, Esq.*, pro hac vice*
FOLEY HOAG LLP
155 Seaport Boulevard
Boston, MA  02110
mlicker@foleyhoag.com
Telephone: (617) 832-1000
Facsimile: (617) 832-7000

Attorneys for Plaintiff
LiquidX, Inc.


/s/ Louis D. Abrams (with permission)
Andrew T. Hambelton, Esq.
BLANK ROME LLP
405 Lexington Avenue
New York, NY 10174
ahambelton@blankrome.com
Telephone: (212) 885-5345
Facsimile: (917) 332-3736

Daniel E. Rhynhart, Esq., *pro hac vice*
Louis D. Abrams, Esq., *pro hac vice*
BLANK ROME LLP
One Logan Square
130 North 18th Street
Philadelphia, PA 19103
rhynhart@blankrome.com
abrams-l@blankrome.com
Telephone: (215) 569-5371
           (215) 569-5468
Facsimile: (215) 832-5371

Attorneys for Defendants
Brooklawn Capital, LLC,
Brooklawn Capital Fund, LLC, and
Brooklawn Capital Fund II, LP